540 A.2d 1

A. M., Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 24, 1988, before Judges CRAIG and MACPHAIL, and Senior Judge BARBIERI, sitting as a panel of three.

*Loralyn McKinley,* for petitioner.

*John C. Fekety,* Assistant Counsel, with him, *Ruth O'Brien,* Assistant Counsel, for respondent.

OPINION BY JUDGE MACPHAIL, April 13, 1988:

A.M. (Petitioner) appeals from the decision of the Department of Public Welfare (DPW) adopting the Recommendation of the hearing officer and denying Petitioner's appeal requesting expungement of the indicated report of abuse. We reverse.

On August 6, 1979, sometime around 6:00 p.m., S.M. was brought to the emergency room of Saint Christopher's Hospital for Children by her uncle. She was seen there by Dr. Mark Reber, who at that time was a pediatrician with the Hospital. Dr. Reber conducted a routine physical examination of the child indicating that she had welts on the left side of her face and on her arms and trunk. Dr. Reber described the welts as being linear and of a width which would suggest that they were made with an object such as a belt. S.M. also had an abrasion on her right side and a hematoma on her left ear.[1] None of S.M.'s injuries required treatment. S.M. was diagnosed as a battered child, and the required suspicion of child abuse petition was filed. S.M. was released from the emergency room to her maternal grandmother. She was five years old at the time.

Upon investigation by Child Protective Services (CPS) of Dr. Reber's report of suspected child abuse, a determination was made of indicated child abuse, with Petitioner being the perpetrator of said abuse. Petitioner seeks to have this report expunged on the basis that it is being maintained contrary to law because it is inaccurate.

Our scope of review in the instant case is to determine whether DPW's adjudication comports with the applicable law, its findings are supported by substantial evidence, and whether Petitioner's constitutional rights were violated. *Cruz v. Department of Public Welfare,* 80 Pa. Commonwealth Ct. 360, 472 A.2d 725 (1984).

Child abuse is defined in pertinent part in Section 3 of the Child Protective Services Law (Law), Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §2203, as "serious physical or mental injury which is not ex-

---

[1] The abrasion was evidently the result of S.M. running into a coffee table. Petitioner contends that the hematoma on S.M.'s left ear was caused by an allergic reaction to a mosquito bite.

plained by the available medical history as being accidental, . . . of a child under 18 years of age, if the injury . . . has been caused by the acts or omissions of the child's parents or by a person responsible for the child's welfare. . . ."[2] Serious physical injury is defined at 55 Pa. Code §3490.4 as:

An injury caused by the acts or omissions of a perpetrator which does one of the following:

(i)   Causes the child severe pain.

(ii)  Significantly impairs the child's physical functioning, either temporarily or permanently.

(iii)  Is accompanied by physical evidence of a continuous pattern of separate, unexplained injuries to the child.

One of the many controversies in this case is whether S.M. suffered serious physical injury, or more specifically, whether her injuries caused her severe pain. Dr. Reber testified at the hearing that, in his opinion, S.M.'s injuries would have caused "moderate to severe" pain. Notes of Testimony (N.T.) at 13. Dr. Reber could not say with certainty whether the child actually was in pain, N.T. at 16, and the child has no recollection of the welts or how she got them, N.T. at 61, and cannot remember her mother ever hitting her with anything other than her hand. N.T. at 63. The Adjudication of DPW contains no finding of whether S.M. was in severe pain as a result of her injuries.

In *Appeal of E.S.*, 82 Pa. Commonwealth Ct. 168, 474 A.2d 432 (1984), this Court affirmed a grant of expungement on the basis that no serious injury was inflicted upon the child. Despite a doctor's testimony that the injury could cause severe pain, the child testified

---

[2] The relevant language of the Law in effect at the time of S.M.'s injury is not materially different from the current language quoted above. The definition above also appears at 55 Pa. Code §3490.4.

that she did not suffer great pain. Without severe pain, no serious injury could be found. This Court reversed a denial of expungement in *N.B. v. Department of Public Welfare,* 107 Pa. Commonwealth Ct. 26, 527 A.2d 623 (1987), because the record did not contain substantial evidence that the child suffered severe pain. The child had testified that she did not remember being in great pain, and there was no medical testimony to support the finding that she was. Similarly, in the instant case, we must have a finding that S.M.'s injuries caused severe pain in order to support the conclusion that she did suffer serious physical injury because there is no evidence of impairment of physical functioning or physical evidence of a continuous pattern of separate, unexplained injuries. Dr. Reber has given no definite statement that S.M. was actually in severe pain and neither has anyone else.

In contrast, abuse was found in *D.P. v. Department of Public Welfare,* 104 Pa. Commonwealth Ct. 642, 523 A.2d 408 (1987). The child in that case was whipped repeatedly with an electrical cord causing lacerations on his body and scrapes and scars on his face. It was established on the record that the child suffered severe pain as a result of his injuries. Unlike *D.P.,* as previously discussed, we have no such determination of severe pain in the instant case.

The next item of controversy concerns the identity of the perpetrator of S.M.'s injuries of August 6, 1979. The date is an important factor in this matter because DPW places great weight on an admission made by Petitioner in order to identify Petitioner as the perpetrator of the particular injuries observed and reported by Dr. Reber. Specifically, Petitioner admitted to the social worker from CPS that she "beat"[3] S.M. to punish her for either

---

[3] In their briefs and at oral argument, Petitioner and DPW dispute the meaning of the word "beat" as used by Petitioner in her

leaving the door open or actually opening the door, thereby allowing a burglar to enter their home. Petitioner contends that the punishment occurred on the same morning as the burglary. Petitioner did not indicate the date of this incident, but contended at the hearing that it occurred before the date that S.M. was seen by Dr. Reber in the emergency room.

On that day, August 6, 1979, Petitioner stated that S.M.'s uncle and cousin came by in the morning to take S.M. to the zoo. S.M. was not seen in the emergency room until around 6:00 p.m. of that day. Dr. Reber testified that S.M.'s welts could not have been inflicted more than hours, rather than days, before he saw them. N.T. at 14. Contrary to Petitioner's testimony, hearsay evidence contained in the emergency room record indicates that S.M., her uncle, and her cousin all told Dr. Reber that S.M. had been punished by her mother on *that* morning for the burglary incident. Exhibit C-1.

In order for there to be a clear identification of Petitioner as the perpetrator of the injuries at issue in this matter, there must be a connection between the admission of Petitioner, the date of the burglary and subsequent punishment, and the date of the emergency room visit. The only way this connection can be made is through the uncorroborated hearsay evidence contained in Dr. Reber's emergency room report. S.M. has no recollection of this day, and Petitioner's testimony is contradictory to the report. Therefore, we cannot hold that there is substantial evidence to support DPW's findings of fact numbers 2 and 4.[4] *See Walker v. Unemployment*

---

admission. What Petitioner meant when she used the word "beat" is not, however, relevant to our decision. It is sufficient to note that Petitioner admits to hitting S.M. with a canvas umbrella strap.

[4] DPW's findings of fact numbers 2 and 4 read as follows:
2. The subject child, S.M., born 7/18/74, was brought to the hospital by an uncle who indicated that A.M. had beat

*Compensation Board of Review,* 27 Pa. Commonwealth Ct. 522, 367 A.2d 366 (1976).

Without those findings, we cannot draw the conclusion that Petitioner injured S.M. on August 6, 1979. Petitioner admits to punishing S.M. with a canvas strap on the day of the burglary, but never admitted to punishing her on the day of the emergency room visit or with a stick, a belt and an umbrella as indicated in the emergency room report. DPW's finding of fact number 6 is also not helpful because it is too imprecise.[5] The end result of this analysis is that we must find that the indicated report of child abuse identifying Petitioner as the perpetrator is inaccurate.

The final issue concerns the expungement of this report. Section 15(d) of the Law, 11 P.S. §2215(d), provides in pertinent part that "[a]t any time, a subject of a report may request the secretary to amend, seal or expunge information contained in the Statewide central register on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this act." Even if we could find substantial evidence that S.M.

---

[sic] the child with a stick, umbrella, and belt to punish her for leaving the door of the house open.

. . . .

4.    During the medical examination on August 6, 1979, S.M. told the attending physician that she had been hit that afternoon by her mother.

[5] DPW's finding of fact number 6 states that:

The appellant admits to administering corporal punishment to S.M. *at about the time of this report* with a canvas umbrella strap, approximately a foot long and an inch wide, as the result of S.M. opening the door of the appellant's home to an intruder who subsequently robbed the house. It was during this punishment that S.M. ran away from her mother and into the sharp corner of a table, striking her abdomen and resulting in the abrasion to her trunk.

(Emphasis added.)

334

was in severe pain and was therefore abused, we would still have the problem of lack of clear identification of the perpetrator of that abuse. There is not substantial evidence on the record to indicate that Petitioner caused the particular injuries which precipitated S.M.'s hospital visit. We are therefore constrained to hold that there is not substantial evidence to uphold the finding of DPW that the indicated report of child abuse against Petitioner is accurate.

Accordingly, we reverse the order of the DPW denying expungement of the report.

ORDER

The order of the Department of Public Welfare in the above-captioned matter is hereby reversed and the Department is directed to expunge the report of indicated abuse concerning A.M.