v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued April 2, 1990.

Decided May 16, 1990.

186

John H. Thomas, Frackville, for petitioner.

Kathleen Harrington, Asst. Counsel, with her, Belinda Davis–Branch, Asst. Counsel, Harrisburg, for respondent.

Before CRAIG and PELLEGRINI, JJ., and BARBIERI, Senior Judge.

BARBIERI, Senior Judge.

J.L. (Petitioner) seeks review of the order entered by the Director of the Office of Hearings and Appeals (OHA), Department of Public Welfare (DPW), denying his request to expunge a report of indicated child abuse filed by the Berks County Children and Youth Services (BCCYS) pursuant to the Child Protective Services Law (Law).[1] We affirm.

■ Mr. Daniel Wagner, a caseworker for BCCYS and a state certified paramedic, received a referral of suspected child abuse naming Petitioner as the perpetrator and alleging that Petitioner twice struck his nine year old daughter with a telephone receiver which resulted in noticeable bruises to her left upper arm and left shoulder. Following an investigation, Mr. Wagner filed a report of indicated child abuse,[2] wherein he named Petitioner as the perpetrator.

Thereafter, Petitioner requested that the report of indicated child abuse be expunged. Both DPW's Office of

---

1. Act of November 26, 1975, P.L. 438, *as amended,* 11 P.S. §§ 2201–2224.
2. A report of indicated child abuse is filed if an investigation conducted by the applicable child protective service agency (CPS) determines that substantial evidence of the alleged abuse exists based on one of the following:

 (i) Available medical evidence.
 (ii) The CPS investigation.
 (iii) An admission of the acts of abuse by the perpetrator.

 55 Pa.Code § 3490.4. Evidence is substantial in the context of child abuse expungement appeals "where it so preponderates in favor of a conclusion that it outweighs, in the mind of the factfinder, any inconsistent evidence and reasonable inferences drawn therefrom." *D.N. v. Department of Public Welfare,* 127 Pa.Commonwealth Ct. 580, 584 n. 2, 562 A.2d 433, 435 n. 2 (1989).

Children, Youth and Families and BCCYS denied Petitioner's request, whereupon Petitioner appealed for a fair hearing.

■ After hearing, a DPW hearing officer filed a recommendation likewise denying Petitioner's request for expungement, which recommendation was subsequently adopted by the Director of OHA. This petition for review followed.[3]

On review, Petitioner initially challenges the timeliness of the hearing officer's adjudication, contending that a lapse of almost eight months between the date on which the hearing record was closed and the date on which the hearing officer filed his recommendation was a denial of his right to a "speedy" decision.[4] In support, Petitioner cites the regulatory provisions set forth at 55 Pa.Code § 3490.106 and relies on subsection (e) thereof which incorporates certain time limits, most notably the 90–day time period specified in 55 Pa.Code § 275.4(b)(1).

> 55 Pa.Code § 3490.106 provides in pertinent part that:
> (a) A subject of the report ... [has] the right to appeal the ... decision to grant or deny a subject's request to amend, seal or expunge an indicated ... report by filing an appeal with the Secretary.
>
> . . . .
>
> (c) If a subject ... files an appeal ..., the subject ... has the right to a hearing before the Department's Office of Hearings and Appeals.

**3.** Our scope of review here is limited to determining whether DPW's decision comports with applicable law, whether necessary findings are supported by substantial evidence and whether there is any violation of Petitioner's constitutional rights. *D.N. v. Department of Public Welfare*, 127 Pa.Commonwealth Ct. 580, 562 A.2d 433 (1989).

**4.** This issue was not addressed in the brief submitted by DPW in opposition to Petitioner's petition for review. However, at oral argument, DPW described it as an issue of first impression and argued that the time period relied upon by Petitioner is not applicable to a child abuse expungement appeal.

(d) Except as provided in subsection (e), hearings will be conducted under 2 Pa.C.S. §§ 501–508 and 701–704 (relating to the Administrative Agency Law) and 1 Pa.Code Part II (relating to rules of procedures).

(e) Hearings will be scheduled and final administrative action taken in accordance with the time limits specified in § 275.4(b) ...

55 Pa.Code § 275.4(b)(1) states that:

(1) Final administrative action [5] must be taken in hearings within the following time limits: 60 days from the date of an appeal from an agency decision affecting food stamps, and *90 days from the date of an appeal from an agency decision affecting* cash assistance, medical assistance, or *social service.* (Emphasis and footnote added.)

Initially, we note that 55 Pa.Code § 3490.106(a) and (c) entitle a suspected perpetrator [6] to appeal a decision denying his or her request for expungement and to an OHA hearing once an appeal is filed. Subsection (d) of 55 Pa. Code § 3490.106 then sets forth the manner in which OHA hearings are to be conducted while subsection (e) thereof specifies time limitations in which OHA hearings are to be scheduled and final administrative action is to be taken. Inasmuch as the statutory and regulatory provisions incorporated by reference in subsection (d) do not contain any time limitations, we find that subsection (e) supplements subsection (d).

 Subsection (e), as previously stated, incorporates the regulatory provision found at 55 Pa.Code § 275.4(b)(1) which requires, *inter alia,* final administrative action to be taken within 90 days from the date of an appeal from an agency decision affecting social service. A child abuse expungement appeal taken by a parent who is named as a

---

**5.** Final administrative action includes "a hearing and subsequent decision by the hearing officer, [and] optional review by the Secretary or his designee ..." 55 Pa.Code § 275.4(b)(2).

**6.** "A subject of the report", as used in these subsections, is defined at 55 Pa.Code § 3490.4 and includes a parent or other perpetrator named in the report. *See also* Section 3 of the Law, 11 P.S. § 2203.

perpetrator in a report of indicated child abuse, as here, is, in our opinion, an appeal from an agency decision affecting social service given that one of the purposes of the Law is to provide rehabilitative services for parents so as to ensure the child's well-being and to preserve and stabilize family life wherever appropriate. Section 2 of the Law, 11 P.S. § 2202. *See also* 55 Pa.Code § 3490.59 (family services are described as social services). Because the filing of such an appeal triggers a right to an OHA hearing under 55 Pa. Code § 3490.106(a) and (c) which is to be held in accordance with 55 Pa.Code § 3490.106(d) and (e), we are compelled to conclude that the 90–day time period specified in 55 Pa.Code § 275.4(b)(1) and incorporated in subsection (e) is applicable to a child abuse expungement appeal taken by a parent who is named as a perpetrator since such an appeal arises from an agency decision affecting social service.

To conclude otherwise would, in essence, require us to redraft the regulation found at 55 Pa.Code § 3490.106, thereby usurping the authority specifically vested in DPW by the Legislature to promulgate regulations necessary to implement the Law. Section 21 of the Law, 11 P.S. § 2221. In order to find the 90–day time period at issue inapplicable here, we would first be required to find that the terms of 55 Pa.Code § 3490.106 exclude child abuse expungement appeals taken by parents who are named as suspected perpetrators. Quite clearly, such a finding would be contrary to subsections (a) and (c) thereof which specifically include such appeals.

Nor does this regulation, as drafted, permit a reasonable inference of implied exclusion. To support an implied exclusion, the 90–day time period incorporated in 55 Pa.Code § 3490.106(e) would have to be construed so as to limit its scope to some "subjects of the report" who take certain types of appeals from agency decisions affecting social service. Such an interpretation would not only necessitate adding restrictive language to the regulation at 55 Pa.Code § 3490.106, which is neither suggested by the regulation when read in its entirety nor necessary to a reasonable

interpretation thereof, but would also necessitate a narrow construction of an expansive phrase incorporated therein, namely, "social service".

Accordingly, the regulation at 55 Pa.Code § 3490.106 cannot be reasonably construed so as to find the 90–day time period incorporated therein inapplicable to the proceedings initiated by Petitioner. We therefore find that DPW failed to act within the 90–day time period specified in 55 Pa.Code § 275.4(b)(1) and incorporated by reference in 55 Pa.Code § 3490.106(e).[7]

■ Although we certainly do not condone the extended delay occasioned by the hearing officer's laxity in filing his recommendation, we have previously declined to strictly enforce the time period specified in 55 Pa.Code § 275.4(b)(1). In *Houtz v. Department of Public Welfare,* 42 Pa.Commonwealth Ct. 406, 401 A.2d 388 (1979), we held that noncompliance with this time period in the context of an appeal from an agency decision affecting cash assistance did not render subsequent DPW actions illegal given the fact that the petitioner therein could demand payment of the assistance requested until final action was taken on her appeal. Similarly, we discern no prejudice to Petitioner here, despite the hearing officer's delay in filing his recommendation, since the report of indicated child abuse naming Petitioner as perpetrator was subsequently found to be substantiated pursuant to final administrative action taken by the Director of OHA within three days of the filing of the hearing officer's recommendation.

More significantly, no penalty attaches to DPW's noncompliance with the 90–day time period at issue.[8] The absence of a penalty in the event of noncompliance certainly suggests that the time periods incorporated by reference in 55 Pa.Code § 3490.106(e) were, more likely than not, intended

7. We note in passing that this disposition is likely attributable, at least in part, to the imprecise manner in which the regulation at 55 Pa.Code § 3490.106 was drafted.

8. *E.g.,* there are no provisions which require an appeal to be deemed granted on the basis of noncompliance.

to be directory, as opposed to mandatory, in nature, despite the use of the word "must" in 55 Pa.Code § 275.4(b)(1), which presumably was not drafted with child abuse proceedings in mind nor was it in any way modified when incorporated into subsection (e).

Given the absence of prejudice to Petitioner as well as the absence of a penalty for noncompliance, we decline to strictly enforce the 90–day time period at issue so as to render DPW's decision on the merits of Petitioner's request ineffective. Moreover, dismissal of this particular case on procedural grounds premised upon an imprecisely drafted regulation where our review establishes that Petitioner suffered no prejudice and that the report of indicated child abuse is indeed supported by substantial evidence, as will be discussed *seriatim*, would visit an injustice upon the very party the Law intended to protect.

Such a result under the instant circumstances, in our opinion, would utterly and unnecessarily circumvent the primary thrust of the Law, namely, "to encourage more complete reporting of suspected child abuse" so as to protect the children of the Commonwealth, who have been found to be "in urgent need" of effective child protection services, from suffering any further injury and impairment. *See* Section 2 of the Law, 11 P.S. § 2202. To sacrifice the safeguard afforded to Petitioner's daughter in the form of a filed, substantiated report of indicated child abuse solely on the basis of a procedural error committed by DPW would, for all practical intents and purposes, serve only to penalize the child. We hasten to add, however, that the result reached here hinges upon the particular circumstances of this case and may not necessarily be forthcoming in future child abuse expungement cases should they present materially different factual circumstances and should the regulation at 55 Pa.Code § 3490.106 remain unchanged.

In the alternative, Petitioner argues that BCCYS failed to sustain its burden of substantiating the report of indicated child abuse pursuant to Section 15(d) of the Law, 11 P.S.

§ 2215(d).[9] In support, Petitioner first claims that Mr. Wagner's investigation was inadequate and, second, that the evidence presented at hearing was insufficient to support the denial of his request.

In raising the issue of investigatory inadequacy, Petitioner cites no authority, but points to Mr. Wagner's failure to conduct an "in-person" interview with him and his wife; to interview his daughter's regular teacher and school nurse; and to gather background information, specifically as to whether his daughter was absent from school or inactive at recess or in other outside activities as a result of the incident in question and whether she came from a well-maintained home where she was properly clothed and fed. After independent review of relevant regulatory and statutory provisions, we have found no requirement that caseworkers must conduct "in-person" interviews with the subject child's parents or make inquiries of the child's teacher or school nurse during the course of their investigations nor have we unearthed any requirement that collateral information concerning the child must be compiled prior to the filing of a report of indicated child abuse. We therefore find Petitioner's claim of investigatory inadequacy unpersuasive.[10]

**9.** Section 15(d) of the Law states in relevant part that:

> At any time, a subject of a report may request the secretary to amend, seal or expunge information contained in the Statewide central register on the grounds that it is inaccurate or it is being maintained in a manner inconsistent with this act.... *The burden of proof in such hearing shall be on the appropriate child protective service....* (Emphasis added.)

**10.** The regulatory provision found at 55 Pa.Code § 3490.55(d) states only that:

> When conducting its investigation, the CPS shall, if possible, conduct an interview with those persons who are known to have or may reasonably be expected to have, information relating to the incident of suspected child abuse including, but not limited to, all of the following:
> (1) The child, if appropriate.
> (2) The child's parents or other person responsible for the child's welfare.
> (3) The alleged perpetrator of the suspected child abuse.
> (4) The reporter of the suspected child abuse, if known.

■ Petitioner's second claim is likewise without merit. Petitioner points to testimony presented at hearing which indicates that he did not intentionally strike his daughter and that one of his daughter's bruises was sustained when she was struck by a softball while playing with her sister.

However, Mr. Wagner, who was found credible by the hearing officer and ultimately by the Director of OHA,[11] testified that when he interviewed Petitioner by telephone, Petitioner admitted "whacking" his daughter because he was angry after having overheard her refer to him as a "jerk" and added that anyone who "badmouthed" him would be punished. Finding of Fact No. 36; N.T., pp. 7–8, 13. Mr. Wagner further testified that neither Petitioner, Petitioner's wife nor Petitioner's daughter advised him during the course of his interviews that Petitioner's daughter was struck by a softball. Findings of Fact Nos. 32–33; N.T., p. 27.

Credibility determinations and the weight to be accorded conflicting testimony are for the administrative agency as factfinder. In performing this function, the agency is free to accept or reject any witness' testimony. Where, as here,

(5) Eyewitnesses to the suspected child abuse.
Here, Mr. Wagner personally interviewed Petitioner's daughter and, in fact, interviewed Petitioner and his wife as well, albeit by telephone. Findings of Fact Nos. 23–24, 33–34, 36; N.T., pp. 5, 7–8, 13, 27. We also note that there were no eyewitnesses and that the record does not specifically name the individual who referred this matter to the CPS involved herein, but notes only that the referral originated from a school. In any event, Mr. Wagner, upon examining and questioning Petitioner's daughter, compiled the same information as that alleged in the referral as well as additional information.
Moreover, Section 17(4) and (5) of the Law, 11 P.S. § 2217(4) and (5), require only that an investigation include a determination of the risk to children who are the subjects of suspected abuse if they remain in the existing home environment as well as a determination of the nature, extent and cause of any condition alleged in a referral of suspected child abuse and a determination as to whether the subject child is being harmed by factors beyond the parent's control.

11. Although the hearing officer conducts the hearing and observes the demeanor of the witnesses, the ultimate factfinder is the Secretary of DPW or his designee, the Office of Hearings and Appeals, as here. *G.S. v. Department of Public Welfare*, 104 Pa.Commonwealth Ct. 84, 521 A.2d 87 (1987).

the agency's findings in this regard are supported by substantial evidence, our limited scope of review precludes us from disturbing them. *See Palmer v. Department of Public Welfare*, 5 Pa.Commonwealth Ct. 407, 291 A.2d 313 (1972).

 Likewise contrary to Petitioner's contentions, the record sufficiently supports a finding that his daughter suffered serious physical injuries which caused her severe pain so as to justify the denial of his request for expungement. "Child abuse" is defined as "serious physical or mental injury which is not explained by the available medical history as being accidental, ... of a child under 18 years of age, if the injury ... has been caused by the acts or omissions of the child's parents ..." Section 3 of the Law, 11 P.S. § 2203. "Serious physical injury" is an injury resulting from a perpetrator's acts or omissions which (i) causes the child severe pain; (ii) significantly impairs the child's physical functioning, either temporarily or permanently; or (iii) is accompanied by physical evidence of a continued pattern of separate, unexplained injuries to the child. 55 Pa.Code § 3490.4.

Again, Mr. Wagner testified that he interviewed Petitioner's daughter five days after the incident in question and, at that time, observed, after examination, one bruise on her left arm and another on her left shoulder which were two to three inches in diameter and which she explained were caused when Petitioner twice struck her with a telephone receiver. Mr. Wagner further testified that Petitioner's daughter still complained of severe pain in her shoulder when he interviewed her and, in fact, had gone to the school nurse for an ice pack to relieve the pain. Findings of Fact Nos. 11, 21, 23–27; Hearing Officer's Adjudication, pp. 6–7; N.T., pp. 5–7, 9, 20–21.[12]

12. Petitioner claims that the caseworker did not testify and, as a result, any findings of fact based upon the caseworker's reports should be disregarded as being supported only by hearsay evidence. Petitioner's Brief, p. 12. Quite clearly, contrary to Petitioner's claim, the caseworker did testify.

Also included in the record is testimony elicited from Petitioner's daughter, who testified that she had indeed told Mr. Wagner that she was in severe pain. N.T., p. 37. She stated as well that Petitioner was angry at the time of the incident and that she had cried when struck by the telephone receiver and had subsequently sought an ice pack from the school nurse to relieve her pain. N.T., pp. 45–46, 49, 58. Moreover, in response to further questioning, she testified as follows: "I am always scared when he [Petitioner] gets mad because I don't know what he is going to do." N.T., p. 61.

In short, the record adequately demonstrates that Petitioner, in anger, twice struck his daughter with a telephone receiver with sufficient force to cause two bruises between two and three inches in diameter which, five days later, were still noticeable and continued to cause her pain of such magnitude that she felt compelled to request an ice pack while at school. This is not a case where DPW made no finding of severe pain, where the subject child had no recollection of any injury or testified that there was no severe pain, where the injury can be described as minimal or slight, or where the placement of the blows was intended to be directed to an area such as the child's buttocks so as to warrant reversing DPW's decision for want of substantial evidence to support its findings of serious physical injury which caused Petitioner's daughter severe pain. *Contrast A.M. v. Department of Public Welfare*, 115 Pa. Commonwealth Ct. 327, 540 A.2d 1 (1988); *N.B. v. Department of Public Welfare*, 107 Pa.Commonwealth Ct. 26, 527 A.2d 623 (1987); *Appeal of E.S.*, 82 Pa.Commonwealth Ct. 168, 474 A.2d 432 (1984).

Accordingly, we conclude that the record sufficiently supports DPW's findings that Petitioner's actions resulted in serious physical injury to his daughter which caused her severe pain. Having found substantial evidence to support the necessary findings and no error committed nor violation of Petitioner's constitutional rights, we affirm DPW's deni-

al of Petitioner's request to expunge the report of indicated child abuse.

## ORDER

AND NOW, this 16th day of May, 1990, the order of the Director of the Office of Hearings and Appeals, Department of Public Welfare, entered September 22, 1989, at File No. 21–88–088, is affirmed.